IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| HEATHER EDEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:15-cv-05099-NKL |
| ) | |
| CAROLYN W. COLVIN ) | |
| ACTING COMMISSIONER ) | |
| OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Plaintiff Heather Eden seeks review of the Administrative Law Judge's decision denying her application for Social Security benefits. For the following reasons, the decision of the Administrative Law Judge is reversed, and the case is remanded for reconsideration.

**I.     Background**

**A. Eden's Medical History**

Eden seeks Social Security benefits for disabilities beginning April 1, 2005. She has a history of anxiety, chronic sinusitis, and migraines. The record reveals that Eden has received ongoing treatment for her physical ailments since 2008.[1] Before 2013 her primary care physician also treated her for ongoing anxiety and depression, primarily through Clonazepam.

---

[1] As there is substantial evidence in the record to support the RFC with respect to Eden's physical impairments, her physical symptoms and treatment are not discussed here.

In January 2013 Eden began to receive mental health care from psychiatric professionals. On January 17 Eden saw Dr. Eva Wilson and reported experiencing panic attacks triggered by being in groups of people, crying, and grieving the loss of her husband eight years prior. Dr. Wilson administered a Modified Mini Mental Status Evaluation and diagnosed her with PTSD, bereavement, and panic disorder with agoraphobia and gave a rule-out diagnosis of borderline intellectual functioning.

On March 17, 2013, Eden began to see Dr. Tabassum Saba for additional mental health treatment. She reported symptoms of anxiety, depression, flashbacks of her husband's death, and recurrent obsessive thoughts, and stated that her Clonazepam was not helping much anymore. Dr. Saba diagnosed generalized anxiety disorder and possible borderline intellectual functioning and gave rule-out diagnoses of OCD and PTSD. The doctor prescribed Cymbalta.

On May 1, Eden reported that she was suffering from side effects of the Cymbalta, including nausea, and had stopped taking it. Two weeks later she reported feeling depressed and stressed and Dr. Saba prescribed Mirtazapine. On May 20 Eden saw Dr. Wilson for therapy and reported feeling sadness, irritability, and excessive sleep. On June 18 Eden reported to Dr. Saba that the Mirtazapine was helping. However, she continued to report to Dr. Saba and Dr. Wilson that she was extremely anxious, isolating, and experienced mood swings.

On August 14, Eden reported to Dr. Saba that she was experiencing severe mood swings and increased anxiety. Dr. Saba told her to taper off the Mirtazapine and start on Abilify. Eden reported to Dr. Wilson later that month that the medication was helping,

but she continued to experience headaches, obsessive thoughts, and worrying. On September 30 she reported that her moods were more stable but her anxiety remained high. On November 6 Dr. Saba increased Eden's dose of Abilify because she continued to experience mood swings and anxiety.

The record contains three medical evaluations of Eden's mental state from the relevant time period.[2] On March 7, 2013, a state agency psychological consultant rendered an opinion based on Eden's medical records. [Tr. 68-71]. Dr. Wilson completed a Medical Source Statement – Mental for Eden on June 23, 2013.[3] [Tr. 387-88]. Dr. Saba completed the same form on November 20, 2013. [Tr. 633-34]. Dr. Wilson and Dr. Saba rendered nearly identical opinions regarding Eden's limitations regarding her understanding and memory and sustained concentration and persistence. Both doctors opined that Eden is markedly limited in her ability to understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or proximity to others without being distracted by them; and complete a normal workday and workweek without interruption from psychologically based symptoms and to perform

---

[2] To be eligible for SSI under Title XVI, Eden must be able to establish that she was disabled while her application was pending. Her application was protectively filed on January 24, 2013.

[3] Dr. Wilson completed another psychological evaluation on January 17, 2013, which was before the relevant time period. The Court does not base its opinion on this evaluation as it was rendered outside the relevant time period, but notes that Dr. Wilson's notes in this evaluation were consistent with her later treatment notes and June 2013 Medical Source Statement.

3

at a consistent pace without an unreasonable number and length of rest periods. The treating doctors' opinions regarding Eden's restrictions in the areas of social interaction and adaptation were varied.

At the administrative hearing, Eden testified that she cares for her teenage daughter and pet dog and is able to care for herself and prepare simple meals. She does light cleaning and laundry, shops in stores, and is able to drive. However, Eden also stated that she experiences high levels of anxiety, has problems getting along with others, and cannot be in public due to her anxiety. She testified that she stopped working eight years ago due to her husband's death.

### B. ALJ Decision

The Administrative Law Judge ("ALJ") denied Eden's request for disability benefits, concluding that she had the Residual Functional Capacity ("RFC") to engage in substantial gainful activity. The ALJ concluded that despite Eden's severe impairments of migraine headaches, fibromyalgia, chronic rhinosinusitis, depression, PTSD, panic disorder, generalized anxiety disorder, and bipolar disorder, she retained the following RFC:

> [T]o perform sedentary work as defined in 20 CFR 416.967(a) except she should avoid climbing ladders, ropes or scaffolds, can occasionally stoop, kneel, crouch and crawl, must avoid concentrated exposure to extreme cold, vibrations, and hazards, avoid all exposure to fumes, odors, dusts and gasses, is limited to simple, routine work with simple instructions, can have occasional contact with supervisors, coworkers and the general public, and requires a sit/stand option every thirty minutes.

4

[Tr. 16]. A vocational expert testified that with this RFC, an individual would be able to perform the requirements of occupations such as an addresser or final assembler.

## II. Standard

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision 'simply because some evidence may support the opposite conclusion.'" *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Substantial evidence is "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

## III. Discussion

Eden argues that the ALJ erred in discounting the opinions of her treating physicians in assessing her RFC.

In evaluating medical source opinions, an ALJ should consider whether the medical source examined the claimant, whether the medical source was a treating source, the length, nature, and extent of the treatment relationship, how well the medical source supported her opinion with relevant evidence, how consistent the medical source's opinion is with the record as a whole, whether the medical source was a specialist, and any other factors supporting or contradicting the opinion. 20 C.F.R. § 404.1527(c).

Ordinarily, treating physician opinions are entitled to significant weight in determining the extent of a claimant's ability. *See* SSR 96-2p West's Soc. Sec. Rulings

5

111-15 (Supp. 2009) ("In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight."). Even when it is inappropriate to accord the treating physician's opinion controlling weight in light of the record, the opinions "should not ordinarily be disregarded and [are] entitled to substantial weight." *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000). A treating physician's opinion is not entitled to controlling weight if it is not supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the record. *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2008). If the ALJ decides to discount a treating physician's opinion, she should "give good reasons" for her decision. *Dolph v. Barnhart*, 308 F.3d 876, 878 (8th Cir. 2002).

The record contains two mental evaluations from Eden's treating physicians. Dr. Wilson rendered her opinion on June 23, 2013, and Dr. Saba rendered his opinion on November 20, 2013. While Eden had been receiving some mental health treatment from her general practitioner since at least 2005, she did not receive specialized treatment from these doctors until 2013 when she filed her application for disability benefits. However, the record reveals that beginning in March 2013 Eden saw Dr. Saba approximately once every two to four weeks. She saw Dr. Wilson approximately once every two weeks beginning in May 2013. In total, Eden saw these two doctors more than twenty times between March and December 2013. [Tr. 544-58, 585-89, 610-31].

The doctors' notes from her treatment sessions reveal varied progress. While she exhibited some progress in her therapy sessions with Dr. Wilson in attempting to cope

6

with her grief over her husband's death, she consistently exhibited severe anxiety over her relationships and other health problems. Dr. Saba's treatment notes indicate that Eden's medications needed altering on a consistent basis. At one point Dr. Saba noted that Eden "often becomes noncompliant with medications because of real or perceived side effects." [Tr. 548].

The Medical Source Statements from Dr. Saba and Dr. Wilson contain significantly different evaluations of Eden's capacity for social interaction and adaptation. However, their opinions are nearly identical with respect to Eden's capacity for understanding and memory, and sustained concentration and persistence. Most notably, both doctors opined that Eden is markedly limited in her ability to maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. [Tr. 387-88, 633-34].

In evaluating the opinions of Dr. Wilson and Dr. Saba, the ALJ gave "some weight to [Dr. Wilson and Dr. Saba's] opinion[s] only where . . . consistent with the above residual functional capacity and the medical evidence of the record." [Tr. 21]. The ALJ concluded that the record did not support the marked limitations to concentration noted by Dr. Wilson and noted that the doctor's opinion appeared to be based mostly on Eden's subjective reports. The ALJ concluded that Dr. Saba's notes

reflected consistently intact memory and concentration, as well as improvement with medication, and did not reflect the extreme limitations set out in the opinion.

While the ALJ asserted that the limitations noted by Dr. Wilson and Dr. Saba are not supported by their treatment records, she only justified her conclusion in relation to the doctors' opinion that Eden is markedly limited in her ability to maintain attention and concentration for extended periods. The ALJ's justification of her decision to reject this opinion is not supported by substantial evidence of the record. The fact that Dr. Saba continuously noted "Attention Span and Concentration: Intact" in the progress notes from Eden's short treatment visits does not necessarily indicate that Eden has the capacity to maintain attention and concentration for extended periods of time. The Social Security Program Operations Manual System ("POMS")[4] notes,

> We must exercise great care in reaching conclusions about your ability or inability to complete tasks under the stresses of employment during a normal workday or work week based on a time-limited mental status examination or psychological testing by a clinician, or based on your ability to complete tasks in other settings that are less demanding, highly structured, or more supportive. We must assess your ability to complete tasks by evaluating all the evidence, with emphasis on how independently, appropriately, and effectively you are able to complete tasks on a sustained basis.

POMS DI § 34001.032(C)(3). The singular fact that Eden was able to maintain her attention and concentration during brief visits with Dr. Saba should not have been used by the ALJ to discard the opinions that Eden is not capable of maintaining attention and

---

[4] The POMS is a source of information used by Social Security employees to process benefits claims. "Although POMS guidelines do not have legal force, and do not bind the Commissioner, [the Eighth Circuit] has instructed that an ALJ should consider POMS guidelines." *Shontos v. Barnhart*, 328 F.3d 418, 424 (8th Cir. 2003).

concentration for extended periods of time, particularly in light of other records such as Dr. Wilson's July 22, 2013 progress notes which indicated that Eden was unable to complete MMPI-2 testing, likely due to extreme anxiety. [Tr. 624].

The ALJ's belief that Dr. Wilson's conclusions were based primarily on Eden's subjective reports is also not supported by the record. Dr. Wilson is a psychologist who is trained to treat patients like Eden. The fact that her evaluations were based on her sessions with Eden in which Eden discussed her feelings and symptoms with the doctor does not mean that Dr. Wilson's opinion constitutes a wholesale adoption of Eden's complaints. Furthermore, Dr. Wilson also conducted a number of objective tests and diagnostic assessments to inform her opinions. [Tr. 376, 629].

The ALJ provided no explanation for her decision to reject the doctors' opinions that Eden is also markedly limited in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and markedly limited in her ability to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

The ALJ's decision to ignore two of Eden's marked limitations and failure to provide good reasons for disregarding her limitations with regard to attention and concentration means that the RFC is not supported by substantial evidence. Therefore, the case must be remanded.

9

## IV. Conclusion

For the reasons set forth above, the ALJ's decision is reversed, and the case is remanded for reconsideration. On remand, the ALJ should give detailed reasons for any decision to discount the opinions of Eden's treating physicians and point to specific evidence in the record to support any decision to discount the limitations found by a physician. She should not rely exclusively on Eden's positive performance in a short treatment visit to conclude that Eden is capable of maintaining concentration and persistence over extended periods of time, nor should she discount doctors' opinions simply because they incorporated consideration of Eden's own complaints about her symptoms. The ALJ should also consider the results of any objective medical testing in evaluating the treating physician opinions. If the ALJ concludes that the medical evidence in the record is insufficient to evaluate the accuracy of the physicians' opinions, the ALJ should obtain additional evidence from the physicians to explain why they found Eden to be limited. On remand the ALJ should also revisit her credibility determination in light of her reconsideration of the treating physician opinions.

/s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: July 18, 2016
Jefferson City, Missouri